## Lessee of William Gray *against* Samuel M'Creary.

When conflicting applications are in the hands of the surveyor, to be executed, he is restricted to their precise quantities; and if he mistakes herein on the ground, he is bound to correct it before he returns the survey.

Adverse possession in case of boundaries, does not hold with the same force as in the case of possession of one entire tract of land.

EJECTMENT for lands, on the south side of Buffaloe creek. There were about 30 acres in dispute, the controversy being confined to the division line between the two farms.

M'Creary was the tenant of Samuel Dale, whose death had been suggested. Both parties claimed under descriptive applications, entered in the secretary's office on 3d April 1769, the plaintiff under Thomas Foster, No. 675, the defendant under an earlier number, No. 206, in the name of James Fleming, each calling for 300 acres of land. Both applications were surveyed on the 12th August 1769, and it appeared from the field notes of William Maclay, who made the surveys, that 331 acres were surveyed under Fleming's application. The division line between the two tracts was called therein, S. 10° E. 384 perches, and was marked regularly on the ground. But Maclay finding upon calculation, that only 272 acres remained for Foster's application, returned a survey for him for 300 acres, 36 perches, calling the division line of the two tracts, S. 14¾° E. as made on the 12th August 1769. On the 3d June 1776, a patent issued thereon to Thomas Rees, in whom the right of Foster became *495] *vested by divers transfers; and on the 24th October 1800, Rees and wife conveyed the premises to the lessor of the plaintiff, in consideration of 370l.

Maclay having made no return on Fleming's application, a survey was made thereon of 303 acres, by Joseph Wallis, on the 28th May 1785, calling the course S. 14¾° E. between the two tracts, but the line was not marked; and a patent according to the draft returned, issued to Fleming, on the 5th December 1785. who afterwards conveyed the same 303 acres to Samuel

Dale, by courses and distances, on the 18th October 1786, in consideration of 600l. excluding the lands in question.

It appeared by parol evidence, that Fleming had first settled in 1773, on the disputed gore of land, had erected a small cabin there, in which he lived, and had cleared four or five acres, which he cultivated and held in his possession until he sold to Dale. He afterwards moved higher up the stream and built there. Dale in 1801, built a good square double log barn, on the disputed part, which cost him from 150l. to 200l. and a lane was occupied on each side by the different claimants. But at this time, Gray knew nothing of the lines of the tract he had bought the fall preceding.

The present ejectment was brought to January term 1804.

After the cause had been fully argued by Messrs. Duncan and D. Smith, for the plaintiff, and Messrs. C. Smith and Hall, for the defendant, YEATES, J. charged the jury in substance as follows :

To execute the equitable system of the lottery, on opening of the land office on the 3d April 1769, according to its true principles, it was indispensably necessary, that the duputy surveyors should exercise a reasonable discretion in making their different surveys ; it is evident that otherwise many persons would lose the lands they had applied for. They were instructed accordingly, that they should execute all warrants and orders of survey, according to the best of their skill, knowledge and understanding, agreeably to the words thereof. Previous to the year 1767, large quantities of land were frequently surveyed, much more than the orders called for ; but by an order of the Board of Property of the 1st May 1767, the deputies were in future restricted to a surplus of 10 per cent. beyond the quantities contained in the warrant of application. But the rule always has been, that where there were conflicting rights in the hands of the deputy to be executed, to execute them according to their priority, but not to exceed the quantities called for, with the usual allowance *of six per cent. for roads and highways. [*496 This rule has been repeatedly declared, both at Nisi Prius and in the Circuit Courts ; and is so conformable to justice and reason, as well as the spirit of the contracts between the lords of the soil and the individuals applying for lands, that it is to be wondered at, that any doubt could arise thereon.

It necessarily follows from hence, that if the deputy surveyor has committed an error in surveying a larger quantity of lands under an application, than he ought to have done, and is fully sensible thereof upon calculating what he has done in the field, he ought to rectify the error and make return of the true quantity of land to which the party is entitled. Having once returned the survey into the office of the surveyor general, his power is at an end, and he cannot subtract from or add to the survey, without fresh orders from his superiors. This is the daily prac-

[Gray's Lessee v. M'Creary.]

tice, the legality of which has been often recognized in courts of justice.

Judging on these principles, there can be no doubt of the right of Maclay, to rectify the mistake which he made on the ground. It was his bounden duty to do so, as an honest officer. When Fleming and Foster applied each for 300 acres, it would be palpable injustice to admeasure 331 acres to the former, and 272 acres to the latter. It is true, that Maclay should have marked the new division line ; but this does not invalidate his return.

Fleming confirms this act of the surveyor by accepting the return of Wallis for 303 acres, and taking out his patent. It is a general principle, that a man shall be bound by the lines of his patent. It is a disclaimer of the lands beyond them, under the same title ; and this is strengthened if possible, by Dale's deed, excluding the lands in controversy.

The right of the thirty acres in dispute, is clearly in the plaint-iff ; and the only doubt is, whether he is barred by the limitation act of 26th March 1785, (2 Dall. St. Laws 281,) from a recovery. The 3d section of that law, enabled persons then having right to lands, to commence their actions within fifteen years thereafter, and by another act of 12th March 1800, (4 Dall. St. Laws 595,) the time was extended to the 26th March 1803. The present ejectment was brought to January term 1804, after that time.

The limitation act is founded in sound policy, and conduces greatly to the peace of the country. But to make it applicable to any case, a clear adverse possession must be proved. It is evident, that in a question of boundaries, evidence of possession does not apply with the same degree of force, as where the whole of a tract of land is held adversely against a claimant. And here *497] *it appears, that Gray at least did not know the true line of division.

But though Fleming accepted a return, and took out his patent in 1785, which would operate as a disclaimer of his title to the 30 acres, he did not in fact surrender up the possession of the land he had cleared, but he and Dale have held it ever since. If an adverse possession has been shewn to this cleared land to the satisfaction of the jury, the limitation act may apply thereto, and save the barn erected by Dale in 1801, but not to the residue of the 30 acres.

The jury found a general verdict for the defendant.

A new trial was moved for, and the motion was afterwards argued. YEATES, J. said, he had no hesitation as to awarding the new trial, leaving the costs to abide the event of the suit. But the parties compromised on equitable terms, and divided the costs of suit.

Cited in 3 Watts 281 to show that a question of boundary is properly left to the jury, on the principle that the lines on the ground constitute the true survey.

[Frey v. Harvey's Ex'rs.]

Cited in 9 Watts 176 in support of the proposition that in a question of bounda-
ries evidence of possession does not apply with the same degree of force as when
the whole of the tract is held adversely against the claimant. Cited for the same
purpose in 9 Pa. 228; 15 Pa. 527; 43 Pa. 204.

## JULY TERM 1808.

## IN THE SUPREME COURT AT SUNBURY.

### FOR THE MIDDLE DISTRICT.

CORAM—TILGHMAN, CHIEF JUSTICE, YEATES, SMITH AND BRACKENRIDGE, JUSTICES.