## Comegys *against* Carley.

A question of boundary is properly left to the jury, on the principle that the lines on the ground constitute the true survey.

Different rights united in the same person are to be treated as if they existed in different persons : hence one who is the owner of a tract of land, and the agent of the owner of an adjoining tract, cannot avail himself of the statute of limitation to support his title to a part of the land of his principal, of which he had taken possession upon a misapprehension of the true boundary ; nor can any one claiming under such agent avail himself of his possession.

ERROR to *Alleghany* county.

This was an action of ejectment by Cornelius Comegys against Louisa Carley and Job Carley, for eighty-five acres of land. The plaintiff and defendants were owners of adjoining surveys, the respective titles to which were indisputable ; the difficulties arose out of a question of boundary. Much testimony was given on the subject of where the line was marked upon the ground ; on which subject the court instructed the jury thus. " It is well settled that the lines and corners found on the ground are the true survey, and control the draft of the survey and the courses and distances in the patent. Is the line described by the witnesses the line running on the ground dividing lots No. 37 and 41 at the time of making the survey ? If it is, the plaintiff cannot recover. If it is not, then the courses and distances in the patent will govern, and the plaintiff would be entitled to recover, unless prevented by the statute of limitations." As to the statute of limitations, the facts appeared to be, that the defendant claimed under Dr Basse Muller, who, at the time he was the owner of the land, had cleared and occupied a part of the land in dispute, and that possession had been continued for more than twenty-one years ; but it also appeared that at the time he took the possession and held it, he was the agent of the plaintiff and had charge of the adjoining survey ; and that his possession of the land in dispute arose out of a misapprehension of the true boundary of his own land. The court below was of opinion that under these circumstances the defendants could not avail themselves of the statute of limitations.

*Forward,* for plaintiff in error.
*Fetterman,* for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—As the lines on the ground constitute the survey, the question of boundary was properly left to the jury on that principle ; but the question of adverse possession was in part for the court.

[Comegys v. Carley.]

Doctor Basse Muller being at the same time an agent of the plaintiff and the proprietor of the adjoining lot, and believing the land now in dispute to be within his boundary, let it to a tenant who cleared and cultivated a part of it. It is plain, and the fact does not seem to have been contested, that he did not mean to hold adversely to the plaintiff's title; but if that were otherwise, it would not strengthen the defendant's case. He represented that title as well as his own; and applying the maxim that different rights united in the same person are to be treated as if they existed in different persons, it follows that the actual possession was taken in mutual misapprehension and ignorance of the actual boundary. If it were adverse, therefore, that was a consequence not intended. It was said by the chief justice, in Wallace *v.* Duffield, 2 *Serg. & Rawle* 527, that possession may be shown not to have been adverse, by facts and circumstances; and such, I should think, are those which indicate a saving of the contingent rights of another instead of a disregard of claims that might be made thereafter. In accordance with this distinction, it was held in Gray *v.* M'Creary, 4 *Yeates* 496, that in questions of boundary, evidence of possession does not apply with the same force that it does where the entire tract of the claimant was held; and it seems to have been considered as decisive, that the party whose legal possession had been displaced, was not apprised of the fact. That case is not to be distinguished from the present, except that in its circumstances it is not so strong: but its force and bearing are greatly augmented by the definition of adverse possession, given in Hawk *v.* Senseman, 6 *Serg. & Rawle* 23, in which it was required to be "actual, continued, visible, notorious, distinct and hostile." Its very nature challenges the right of every opposing claimant, and invites him into the arena of litigation, where his title is to be postponed but for having postponed the day of trial beyond the period prescribed by the statute; and it necessarily exhibits something to quicken him and put him on his guard. I do not say that there may not be an adverse possession in the case of an unsettled boundary; on the contrary, I admit that a party may make out an incontestable title under the statute where the boundary was in dispute; but it is not easy to understand why a title should be postponed for the supposed laches of the proprietor, and in favour of one who did not profess to hold against it, when the intrusion was an accident equally unsuspected by both. The ignorance of the party to be affected was held to be decisive in Gray *v.* M'Creary, in accordance with the construction made of another branch of the statute which is held to run against an action founded on a secret fraud but from the time of its discovery. The analogy is still more apposite to the present case; for it would have been a positive and a secret fraud in Doctor Muller had he taken possession adversely to the title of one who had committed his interest to his management, and it is unconscionable in those who derive title from him to attempt an advantage from it. Under these circumstances, the jury were properly instructed that the statute would not begin

III.—LL

[Comegys v. Carley.]

to run before the plaintiff had notice that the possession was held adversely to him, or at least before Doctor Muller had ceased to be his agent.

Judgment affirmed.